## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOE DELGADILLO,

                Plaintiff,

     v.

COMMONWEALTH OF
PENNSYLVANIA DEPARTMENT OF
CORRECTIONS, et al.,

                Defendants.

CIVIL ACTION NO. 3:16-CV-00041

(MANNION, D.J.)
(MEHALCHICK, M.J.)

### REPORT AND RECOMMENDATION

       This is a civil rights action, initiated by Plaintiff Joe Delgadillo ("Delgadillo" or "Plaintiff") upon the filing of the initial complaint on December 11, 2015. (Doc. 1). Presently before the Court is a motion for summary judgment, filed by the remaining Defendants in this matter. (Doc. 59). For the following reasons, the Court recommends the motion be **GRANTED** in part and **DENIED** in part.

### I.   BACKGROUND AND PROCEDURAL HISTORY

       Plaintiff filed his initial complaint in this Court on December 11, 2015. (Doc. 1). On March 3, 2017, Delgadillo submitted his first amended complaint. (Doc. 24). On July 14, 2017, Delgadillo filed a motion to amend his complaint, seeking to substitute named Defendants for the John Doe Defendants in his original complaint. (Doc. 35, at 1). The Court granted this motion and Delgadillo filed an amended complaint on July 17, 2017, which now serves as the operative complaint in this action. (Doc. 36); (Doc. 37). Delgadillo filed the amended complaint pursuant to 42 U.S.C. § 1983 against Sergeant Stubbs, Corrections Officer Kerstetter, and Corrections Officer Snyder ("Defendants"). (Doc. 37, at 1; 5).

Delgadillo's lone cause of action arises under the Eighth Amendment, where he asserts Defendants were deliberately indifferent in failing to provide him with constitutionally adequate medical care during his incarceration at State Correctional Institution Camp Hill ("SCI-Camp Hill"). (Doc. 37, at 4).

Defendants, all employees of SCI-Camp Hill, filed a motion for summary judgment on September 12, 2018. (Doc. 59). Defendants move for summary judgment on the ground that Delgadillo's claim is barred by the applicable statute of limitations. (Doc. 61, at 3). Alternatively, Defendants argue that summary judgment should be entered in their favor as "no reasonable trier of fact could find that Defendants had been deliberately indifferent to Plaintiff in violation of the Eighth Amendment." (Doc. 61, at 3). Both sides submitted briefs and statements of material fact, as required by M.D. Pa. Local Rule ("LR") 56.1. (Doc. 60); (Doc. 61); (Doc. 67); (Doc. 67-1); (Doc. 68). Accordingly, the matter is now ripe for review.

## II.   STATEMENT OF MATERIAL FACTS[1]

Delgadillo's action pertains to a hand injury he sustained at SCI-Camp Hill, and Defendants' subsequent responses to his complaints of pain. Delgadillo contends the injury occurred when he was suddenly awakened and fell out of his bunk onto the floor of his cell. (Doc. 60, at ¶ 4). The fall resulted in a fracture to Plaintiff's Fourth Metacarpal. (Doc. 67-1, at ¶ 38); (Doc. 67-6, at 5).

---

[1] The material facts from the movant's statement of facts will be deemed admitted, unless the opposing party specifically disputes that fact in its response. *See* M.D. Pa. Local Rule ("LR") 56.1.

Medical records indicate the fall occurred at 1:45 PM on December 15, 2013, and that Delgadillo was treated for his hand injury at 2:00 PM that same day. (Doc. 60, at ¶¶ 6-7). Delgadillo, however, submits the fall occurred earlier in the morning. (Doc. 67-1, at ¶¶ 6-7). Moreover, Delgadillo immediately knew that he had "significantly injured his hand" and, asserts that he "complained [to the Defendants] throughout the day and into the evening." (Doc. 67-1, at ¶ 8).

Registered Nurse Denise Bonetti treated Delgadillo on December 15, 2013. (Doc. 60, at ¶ 15); (Doc. 67-1, at ¶ 15). The Nursing Evaluation Tool pertaining to Delgadillo's December 15th medical treatment reflects that Delgadillo suffered a half-inch laceration on the top of his right hand. (Doc. 60, at ¶ 8). The Nursing Evaluation Tool further indicates that Delgadillo's wound was cleansed with topical ointment, dressed and bandaged, and treated with steri-strips. (Doc. 60, at ¶ 13). Registered Nurse Bonetti also provided him with a plastic shower glove. (Doc. 60, at ¶ 15); (Doc. 67-1, at ¶ 15). Registered Nurse Bonetti instructed Delgadillo to return to medical if his condition worsened and referred him to a physician to guard against tetanus. (Doc. 60, at ¶¶ 12-13).

Delgadillo was scheduled for a follow-up appointment on December 16, 2013. (Doc. 60, at ¶ 14). At the December 16th appointment steri-strips were re-applied to Delgadillo's hand, no bleeding was observed, and another follow-up appointment was advised to monitor for infections. (Doc. 60, at ¶¶ 16-19). Delgadillo was given further instruction to "keep his finger dry and to allow the strips to loosen and fall off on their own." (Doc. 60, at ¶ 18).

Delgadillo's next contact with the infirmary occurred on December 27th, 2013. (Doc. 60, at ¶ 20). There he received a knee sleeve to replace a previously damaged item. (Doc. 60, at ¶ 21). Notes from this visit do not indicate Delgadillo complained about pain from his hand

injury. (Doc. 60, ¶ 23); (Doc. 62-1, at 2). Delgadillo, however, submits that he complained about pain during the December 27th medical encounter. (Doc. 67-1, at ¶ 23).

Progress notes from a December 31, 2013 medical encounter indicate Delgadillo did not mention pain resulting from his hand injury. (Doc. 60, at ¶¶ 24-25); (Doc. 62-1, at 4). Delgadillo also saw medical officials on January 9, 2014. (Doc. 60, at ¶ 26). The contemporaneous treatment notes indicate Delgadillo did not complain of any hand pain during this clinical encounter. (Doc. 60, at ¶28); (Doc. 62-1, at 4). Delgadillo was subsequently transferred to SCI-Coal Township on January 31, 2014.[2] (Doc. 60, at ¶ 29). The medical note associated with his transfer reflects SCI-Camp Hill medical staff observed no injuries as they checked Delgadillo, nor did Delgadillo report any injuries. (Doc. 60, at ¶¶ 29-31); (Doc. 62-1 at 5). Delgadillo, however, argues that he did in fact have an injury, pain, or otherwise complained thereof during his respective December 31, 2013, January 9, 2014 and January 31, 2014 medical encounters. (Doc. 67-1, at ¶¶ 25, 28, 30-32).

## III.   MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return

---

[2] In their statement of facts, Defendants include January 13 and January 31 as dates for Delgadillo's transfer to SCI-Coal Township. (Doc. 60, at ¶ 29). However, as the SCI-Coal Township Intake Note is dated January 31, 2014, this is the date the Court refers to. (Doc. 62-1, at 5).

a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The Third Circuit emphasized that, "although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[3] *Velentzas v. U.S.*, No. 4: CV-07-1255, 2010 WL

---

[3] *See also Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs on summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

3896192, at *7 (M.D. Pa. Aug. 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 868 (3d Cir. 2007) (citation omitted). The opposing party "'cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument.'" *Velentzas,* 2010 WL 3896192, at *7 (quoting *Goode,* 241 F. App'x at 868) (citation omitted). "Rule 56(c) mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citing Fed. R. Civ. P. 56).

IV. **DISCUSSION**

A. STATUTE OF LIMITATIONS AND RELATION BACK

Defendants move for summary judgment on the grounds that claims against the named defendants in the operative complaint (Doc. 37), substituted for the John Doe Correctional Officers named in the original complaint (Doc. 1), do not relate back to the claims in the original complaint pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, and are barred by the applicable statute of limitations. (Doc. 61, at 12-13).

In response, Delgadillo asserts that the Defendants had notice of the original timely filed complaint, thus satisfying the requirements of the relation back doctrine. Specifically, Delgadillo argues that notice can be imputed to the Defendants through either the identity of interest method or the shared attorney method. (Doc. 67, at 7). Defendants, however, submit they lacked timely notice of Delgadillo's suit under either of these methods. (Doc. 61, at 9-10).

Federal courts apply the state personal injury statute of limitations in § 1983 actions. *See Owens v. Okure*, 488 U.S. 235, 250 (1989); *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985).

As relevant here, Pennsylvania's statute of limitations for personal injury actions is two years. 42 Pa. C.S.A. § 5524; *Little v. Lycoming Cty.*, 912 F. Supp. 809, 814 (M.D. Pa. 1996). The question of when a cause of action accrues, however, is a question of federal law. *Sabella v. Troutner*, No. 3:CV-05-0427, 2006 WL 229053, at *3 (M.D. Pa. Jan. 31, 2006) (citing *Smith v. Wambaugh*, 887 F. Supp. 752, 755 (M.D. Pa. 1995)). "[U]nder federal law… 'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'" *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998) (quoting *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir. 1991)).

Here, the actions giving rise to the complaint occurred on December 15, 2013 and thereafter, when Delgadillo injured his hand at SCI-Camp Hill and subsequently complained of pain. (Doc. 1, at 8). Delgadillo filed his initial complaint on December 11, 2015, within the applicable two-year statute of limitations. (Doc. 1); *See* 42 Pa. C. S. A. § 5524; *Little*, 912 F. Supp. at 814. In the initial complaint Delgadillo did not identify the current Defendants, and did not do so until he filed the operative complaint on July 17, 2017, beyond the two-year statute of limitations period.[4] (Doc. 37, at 1); *See* 42 Pa. C. S. A. § 5524; *Little*, 912 F. Supp.

---

[4] Delgadillo's operative complaint relates back to the claims in his original complaint, instead of the claims in his subsequent first-amended complaint (Doc. 24) for two reasons. First, Delgadillo filed his first-amended complaint on March 3, 2017, beyond the two-year limitations period applicable to this suit. (Doc. 24); *See* 42 Pa. C. S. A. § 5524; *Little*, 912 F. Supp. at 814. Because the first-amended complaint is also outside the limitations period, the second-amended complaint must relate back to the original complaint as only the original complaint is within the limitations period. *See Meyers v. Fisher*, No. 1:13–cv–1631, 2014 WL 4626502, at *3-4 (M.D. Pa. Sept. 15, 2014) (analyzing whether operative second-amended complaint relates back to original complaint, as the original complaint, but not the first-amended complaint, was filed within the limitations period). Second, the first-amended complaint also names John Does as Defendants, and does not identify Sergeant Stubbs,

at 814. As such, to withstand summary judgment against Defendants, Delgadillo's operative complaint must comply with the doctrine of relation back under Fed. R. Civ. P. 15(c)(3). *See* 42 Pa. C. S. A. § 5524; *Little*, 912 F. Supp. at 814.; *see also Britt v. Arvanitis*, 590 F.2d 57, 62 (3d Cir. 1978) ("Since the replacement of a 'John Doe' defendant with a named party introduces a new litigant… all conditions of Rule 15(c) must be met for the amendment to relate back.").

Fed. R. Civ. P. 15(c) provides:

(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when:

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

"The Rule is written in the conjunctive, and courts interpret 15(c)(3) as imposing three conditions, all of which must be met for an amended complaint that seeks to substitute newly

---

Corrections Officer Kerstetter, or Corrections Officer Snyder as parties. (Doc. 24, at ¶ 2). Accordingly, for statute of limitations purposes, at issue is whether the claims against Defendants in the operative, second amended complaint relate back to the original, timely filed complaint.

named defendants." *Singletary v. Pa. Dep't of Corr.*, 266 F. 3d 186, 194 (3d Cir. 2001) (citing *Urrutia v. Harrisburg Cty. Police Dep't*, 91 F. 3d 451, 457 (3d Cir. 1996)). The first condition is that the claim in the amended pleading arose out of a "common core of operative facts" as set forth in the original pleading. Fed. R. Civ. P. 15(c)(2); *Bensel v. Allied Pilots Ass'n*, 387 F. 3d 298, 310 (3d Cir. 2004) (internal citation omitted). The second condition is that the newly named party must have "received such notice of the institution of the action within the 120 day period that the party will not be prejudiced in maintaining a defense on the merits." *Singletary*, 266 F.3d at 194. The third condition is that the newly named party must have known, or should have known (again, within the 120 day period), that "but for a mistake" made by the plaintiff concerning the newly named party's identity, "the action would have been brought against" the newly named party in the first place. *Singletary*, 266 F.3d at 194 (quoting Fed. R. Civ. P. 15(c)(3)(B)). "Plaintiff has the burden of demonstrating each of the three [conditions]." *Spiess v. Pocono Mountain Reg'l Police Dep't*, No. 3:10-cv-287, 2012 WL 1965387, at *4 (M.D. Pa. May 31, 2012) (citing *Garvin v. City of Phila.,* 354 F.3d 215, 222 (3d Cir. 2003)). The parties do not dispute that the first condition is met, and Defendants do not make an argument regarding the third condition. At issue here is whether the second condition, the notice requirements of Rule 15(c)(3)(A), have been met. (Doc. 61, at 16); (Doc. 67, at 7).

The notice requirement condition has "two requirements, notice and the absence of prejudice, each of which must be satisfied." *Urrutia*, 91 F. 3d at 458. "[T]he notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action." *Singletary*, 266 F. 3d at 195 (citing *Bechtel v. Robinson*, 886 F.2d 644, 652 n. 12 (3d Cir.1989)). "Notice to the newly named defendants

may either be actual or constructive."[5] *Bryant v. Vernoski*, No. 11–263, 2012 WL 1132503, at *2 (M.D. Pa. Apr. 4, 2012) (internal citations omitted). Constructive notice may occur through the "'identity of interest' method." *Bryant*, 2012 WL 1132503, at *2 (citing *Singletary*, 266 F.3d at 196-200). Under the "identity of interest" method, a court will impute notice to the previously unnamed defendants "if the parties are so closely related in their business operations or other activities that filing suit against one serves to provide notice to the other of the pending litigation." *Garvin v. City of Phila.*, 354 F.3d 215, 227 (3d Cir. 2003) (citing *Singletary*, 266 F.3d at 200). When relying on the "identity of interest" method to withstand a motion for summary judgment, the non-movant must "demonstrate that the circumstances surrounding the filing of the lawsuit permit the inference the notice was actually received by the parties sought to be added as defendants during the relevant time period." *Miller v. Hassinger*, 173 F. App'x 948, 956 (3d Cir. 2006).

Defendant first submits that Plaintiff's notice argument fails because "[t]he previous [d]efendants included a prison administrator and the prison itself." (Doc. 60, at 16). A staff level position alone cannot serve as a basis for finding an identity of interest with an employer entity defendant, because a staff level position is not high enough in the employment hierarchy to conclude that the interests are identical between the entity and the staff member.

---

[5] Actual notice can occur when a party who has some reason to expect his involvement in the action hears that the action was commenced, through some informal means. *See Singletary*, 266 F.3d at 195 (citing *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 175 (3d Cir. 1977) (person who plaintiff sought to add as defendant had sufficient notice, after proposed defendant saw a copy of the complaint which referred to an "unknown employee" at his place of employment). Delgadillo does not argue actual notice exists in this case as to the named Defendants.

*See Singletary*, 266 F. 3d at 199 (citing *Keitt v. Doe*, No. CIV.A. 93-2968, 1994 WL 385333 (E.D. Pa. July 22, 1994)). Moreover, an "agency [relationship] alone is an insufficient basis for imputation of notice." *Benussi v. Luzerne Cty.*, No. 3:17-CV-1668, 2018 WL 4110559, at *7 n.2 (M.D. Pa. Aug. 29, 2018) (citing *Walter v. Muhlenburg Twp. Police Dep't*, 536 F. App'x 213, 216 (3d Cir. 2013); *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434-35 (3d Cir. 1994) (explaining employer-employee is an agency relationship)).

In his timely original complaint, Delgadillo names the Commonwealth of Pennsylvania DOC, SCI Camp Hill, John Doe Corrections Officers 1-10 at SCI-Camp Hill, physician assistant Amy Flatt, SCI-Camp Hill Superintendent Laurel Harry, and Sergeant Bocci, a Corrections Officer employed at SCI-Camp Hill as defendants. (Doc. 1, at ¶¶ 2-8). Defendants are correct that, as staff level employees of SCI-Camp Hill, they do not share an identity of interest with the prison entity itself. *See Singletary*, 266 F. 3d at 199 (citing *Keitt*, 1994 WL 385333). Defendants are also correct that they do not share an identity of interest with a prison administrator, SCI-Camp Hill Superintendent Laurel Harry, as an agency relationship without more is insufficient to impute notice. *See Benussi*, 2018 WL 4110559, at *7 n.2 (citing *Walter*, 536 F. App'x at 216; *Winback & Conserve Program, Inc.*, 42 F.3d at 1434-35). Delgadillo submits that "the positions of Kerstetter, Snyder, and Stubbs are closely related to the position of Bocci." (Doc. 67, at 8). Sergeant Bocci, a corrections officer at Camp Hill, and John Doe Corrections officers were named as defendants in the timely original complaint. (Doc. 1, at ¶¶ 4; 7). Like Sergeant Bocci, the Defendants are also Corrections Officers at SCI-Camp Hill. (Doc. 37, at 1). When viewed in the light most favorable to Delgadillo, a reasonable factfinder could infer that the Defendants and Sergeant Bocci shared employment duties that occasioned regular contact with Delgadillo and with each other.

*Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). Thus, the record evidence arguably permits an inference that naming Sergeant Bocci as a defendant in the original complaint provided notice of the suit to the remaining Defendants within the 120-day period under Rule 15(c)(3).[6] *See Miller*, 173 F. App'x at 956; *Garvin*, 354 F. 3d at 227 (citing *Singletary*, 266 F.3d at 200); *Bryant*, 2012 WL 1132503, at *2 (citing *Singletary*, 266 F.3d at 196-200); *see also Wine v. EMSA Ltd. P'ship*, 167 F.R.D. 34, 39 (E.D. Pa. 1996) (finding, without discussion, a specific correctional officer named in plaintiff's amended complaint shared an identity of interest with six Jane Doe and one John Doe correctional officers named in original complaint). Construing the record in the light most favorable to the non-moving party, the operative complaint relates back to the initial complaint, timely filed within the statute of limitations period.[7] As such, it is recommended that Defendants' motion for summary judgment (Doc. 59) be **DENIED** on the basis of statute of limitations.

B. Deliberate Indifference Claim

Defendants also move for summary judgment on the merits of Delgadillo's deliberate indifference claim. For the following reasons, it is recommended that Defendants' motion be granted.

_____

[6] Because defendants do not contend they were prejudiced by delay, the Court only considers the notice aspect of the second prong of 15(c)(3). *See Sendobry v. Michael*, 160 F.R.D. 471, 473 (M.D. Pa. 1995) ("Since notice is not at issue and [the newly-added defendant] does not contend that he was prejudiced by the delay in adding his name to the [c]omplaint, the sole remaining question is whether the addition of [the newly-added defendant] is proper.").

[7] Because the Court finds record evidence permits an inference that Rule 15(c)(3) is satisfied based on the "identity of interest" method, the Court declines to address the parties' alternative arguments regarding whether the "shared attorney method" could also satisfy the requirements of Rule 15(c)(3). (Doc. 61, at 16). (Doc. 67, at 7).

### 1. Complaints of pain while under the care of medical professionals

First, Defendants submit that the record fails to establish a claim for deliberate indifference against them, as they are all non-medical prison personnel. (Doc. 61, at 6-9); (Doc. 68, at 5). Specifically, Defendants submit that the record evidence refutes Delgadillo's allegation that he did not receive timely medical care despite his cries of pain. (Doc. 61, at 9-10). Delgadillo claims that Defendants denied his requests for medical treatment, even though he repeatedly complained of pain. (Doc. 67, at 5-6). Delgadillo further argues that summary judgment must be denied because Defendants effectively challenge the credibility of his statements. (Doc. 67, at 6).

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's prohibition on unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[8] *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). Prison authorities exhibit deliberate indifference where they "deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering or the threat of tangible residual injury," or if they intentionally refuse to provide care for a known medical need. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "Deliberate indifference is also evident where prison

---

[8] The deliberate indifference prong is sometimes referred to as the subjective prong, as it focuses on the "individual defendant's state of mind." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 536 (3d Cir. 2017).

officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (internal citations omitted).

However, concerning "non-medical defendants, '[i]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.'" *Jones v. Falor*, 135 F. App'x 554, 556 (3d Cir. 2005) (quoting *Spruill,* 372 F.3d at 236). "'[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.'" *Jones,* 135 F. App'x at 556 (quoting *Spruill,* 372 F.3d at 236); *see also Davis v. Prison Health Servs.*, 558 F. App'x 145, 150 (3d Cir. 2014) (citing *Spruill,* 372 F.3d at 236) (upholding grant of summary judgment in favor of non-medical prison personnel on deliberate indifference claim when plaintiff failed to show the non-medical personnel's "involvement in the matter consisted of anything more than reviewing his grievance and deferring to the judgment of medical personnel"). Specifically, "a non-medical prison official is not deliberately indifferent simply because he or she failed to respond to a prisoner's medical complaints when a doctor [is] already treating the prisoner." *Estein v. Showalter*, No. 1:13-CV-02474, 2017 WL 4310188, at *19 (M.D. Pa. Sept. 28, 2017) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993), *aff'd*, 723 F. App'x 93 (3d Cir. 2018)).

Delgadillo sustained the hand injury at issue on December 15, 2013, and, according to the Nursing Evaluation Tool notes in the record, initially received treatment at 2:00 PM that day. (Doc. 60, at ¶¶ 6-7); (Doc. 67-1, at ¶¶ 6-7). Registered Nurse Bonetti's December 15, 2013 Nursing Evaluation Tool notes also indicate that, although there was no active bleeding,

a referral was required because the "would/injury [was] more than superficial." (Doc. 62-1, at 1). Follow up treatment notes from December 16, 2013 indicate that Delgadillo saw PA Flatt, who noted that Delgadillo's injured hand was not actively bleeding. (Doc. 62-1, at 2). The next entry in the treatment notes occurs on December 27, 2013, where Delgadillo again saw PA Flatt and was provided a knee sleeve to assist with instability in his right knee. (Doc. 62-1, at 3-4).

Medical progress notes from December 31, 2013, January 9, 2014, and January 30, 2014 do not indicate that Delgadillo complained of pain when he saw Registered Nurse Bonetti or PA Flatt on these days. (Doc. 62-1, at 4). Moreover, medical notes from Delgadillo's January 31, 2014, intake screening at SCI-Coal Township indicate Delgadillo did not report any injuries. (Doc. 62-1, at 5). As such, the medical history cited to by Defendants shows that Delgadillo treated with medical personnel several times from the date of his injury on December 15, 2013 through the end of January 2014.

Delgadillo's Eighth Amendment claim rests on the allegation that Defendants did not respond to his regular complaints of pain stemming from his hand injury. In support of this contention, Delgadillo cites to various inmate grievances he wrote in June and July of 2014. (Doc. 67-1, at ¶¶ 23; 25; 28; 30-32; 38). Specifically, Delgadillo points to seven grievances forms he completed and two hand-written letters. (Doc. 67-4, at 1-9). Four of the grievances are dated from June of 2014. (Doc. 67-4, at 3; 5-6; 8). Three of the grievances are dated from

July of 2014. (Doc. 67-4, at 1-2; 7). Neither of the two letters Delgadillo provides are dated. (Doc. 67-4, at 4; 9).[9]

In grievance number 515606, dated June 10, 2014, Delgadillo states that he complained to medical staff on December 15, 2013 regarding his hand pain.[10] (Doc. 67-4, at 6). In his grievance dated June 8, 2014, Delgadillo states he made sure medical staff knew he was in severe pain regarding his December 15, 2013, hand injury. (Doc. 67-4, at 5). Further, in his grievances dated July 7, 2014, Delgadillo mentions that he complained about constant hand pain after the injury occurred.[11] (Doc. 67-4, at 1-2; 7). Specifically, the July 7th grievances state that after Delgadillo was "transferred to [SCI] Coal [Township], he continued to tell the medical staff about the pain in [his] hand." (Doc. 67-4, at 1).

Thus, the grievances only state that Delgadillo complained of severe pain on December 15, 2013, and do not encompass the later treatment dates. The undisputed evidence

---

[9] Delgadillo's first letter, addressed to the Bureau of Health Care Services, contains allegations about his hand injury and subsequent treatment, without mentioning the Defendants by name. (Doc. 67-4, at 4). The second letter, addressed to Amanda West, simply indicates that Delgadillo appealed grievance number 515606. (Doc. 67-4, at 9). Neither of these letters, however, provide support for Delgadillo's allegation that the Defendants failed to respond to his complaints of pain.

[10] Delgadillo's grievances state his hand injury occurred on December 14, 2013. However, medical evidence in the record shows Delgadillo's hand injury occurred December 15, 2013. (Doc. 62-1, at 1). Moreover, the parties' statements of material facts agree that the hand injury occurred on December 15, 2013. (Doc. 60, at ¶ 6); (Doc. 67-1, at ¶¶ 6-7). Accordingly, the Court will modify Delgadillo's references to the hand injury to reflect a December 15, 2013, date of occurrence.

[11] In the second grievance from July 7, 2014, Delgadillo states he is "filing a [sic] amended grievance which in accords [sic] with Adm 804 policy." (Doc. 67-4, at 2). Although neither the first nor second July 7th, 2014 grievance provided by Delgadillo contains a grievance number, the second grievance appears to be an amendment of the first.

in the record establishes that Delgadillo was treated by medical personnel on December 15, 2013. (Doc. 62-1, at 1). Moreover, none of the grievances from June and July of 2014 mention the three remaining Defendants, Sergeant Stubbs, Corrections Officer Kerstetter, and Corrections Officer Snyder, therein, who are all non-medical personnel. The grievances instead state that Delgadillo's complaints of pain were made to medical personnel. (Doc. 67-4, at 1-2; 6). Accordingly, Delgadillo has not come forward with record evidence in support of his allegations that Defendants, as opposed to the medical staff, failed to respond to his complaints of pain. *See Jones*, 135 F. App'x at 556.

Further, even if Delgadillo had expressly stated that Defendants, as opposed to unidentified medical providers, continuously ignored his complaints of pain after the injury occurred, there is nothing in the record establishing that Defendants' "involvement in the matter consisted of anything more than reviewing his grievance[s] and deferring to the judgment of medical personnel." *See Davis*, 558 F. App'x at 150 (citing *Spruill,* 372 F.3d at 236). Moreover, even if Delgadillo had supported his allegations that the Defendants failed to respond to his complaints of pain, it would be insufficient to show deliberate indifference on their part given he was under the treatment of medical personnel. *See Estein*, 2017 WL 4310188, at *19 (citations and subsequent history omitted). The record evidence does not establish or even create an issue of fact as to whether Defendants had reason to believe Delgadillo was not in "capable hands." *See Jones*, 135 F. App'x at 556 (quoting *Spruill,* 372 F.3d at 236). As such, Delgadillo has not come forward with sufficient evidence such that a reasonable juror could conclude Defendants were deliberately indifferent while Delgadillo was under the care of medical personnel.

## 2. Complaints of pain before receiving treatment from medical professionals

Defendants move for summary judgment on the ground that there is no issue of material fact regarding the time of day that his hand injury occurred, or the time at which he initially received treatment. (Doc. 67, at 2). First, Defendants aver Delgadillo cannot rely on the allegations of his amended complaint to create a dispute of fact. (Doc. 67, at 2). Defendants further submit that Delgadillo's reliance on a purportedly "self-serving affidavit" is likewise insufficient to create a disputed material fact regarding the time the injury occurred, or the cause and severity of Delgadillo's injury. (Doc. 67, at 2-3). Therefore, Defendants submit that paragraphs six through eleven of their statement of material facts should be deemed unopposed.[12] (Doc. 67, at 2-3).

Notably, Delgadillo's affidavit states his injury occurred "[d]uring the early morning of December 15, 2013." (Doc. 67-3, at ¶3). According to the affidavit, Sergeant Bocci's yelling startled Delgadillo from his sleep and caused him to smash his hand on the window sill of his cell. (Doc. 67-3, at ¶¶ 3-5). Delgadillo's affidavit also asserts he immediately knew that he had "significantly injured" his hand and complained about it throughout the day to the Defendants. (Doc. 67-3, at ¶¶ 6-7). Further, Delgadillo affirms that his injured hand bled on

---

[12] Defendants' statement of material facts, at paragraphs six and seven, states the injury occurred at 1:45 PM, and that Delgadillo first received medical treatment at 2:00 PM on December 15, 2013. (Doc. 60 at ¶¶ 6-7). Paragraphs eight through eleven of Defendants' statement of material facts indicate that Plaintiff suffered a one-half inch laceration on the top of his right hand, that he slipped when exiting his bunk, and further that he was not actively bleeding when he initially received medical treatment. (Doc. 60, at ¶¶ 8-11). In support of these facts, Defendants rely on the Registered Nurse Bonetti's notes from the Nursing Evaluation Tool. (Doc. 62-1, at 1).

his cell floor, window, and sink, and that he had to clean it up. (Doc. 67-3, at ¶ 8). Viewing the record in the light most favorable to the non-moving party, the Court considers whether Delgadillo comes forth with sufficient evidence to withstand Defendants' motion for summary judgment regarding any delay in his initial receipt of medical treatment.

"The non-moving party 'cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial.'" *Ackah v. Commonwealth of Pa. Dep't of Corr.*, No. 4:08–CV–00376, 2009 WL 2951986, at *2 (M.D. Pa. Sept. 14, 2009) (quoting *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000)). Additionally, "[c]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" *Kirleis v. Dickie, McCarney & Chilcote, P.C.*, 560 F. 3d 156, 161 (3d Cir. 2009) (quoting *Blair v. Scott Specialty Gases*, 283 F. 3d 595, 603 (3d Cir. 2002)); *see also Iseley v. Beard*, No. 1:CV–02–2006, 2009 WL 1675731, at *11 (M.D. Pa. June 15, 2009) (citing *Dantzler v. Beard*, No. 05-1727, 2007 WL 5018184, at *8 (W.D. Pa. Dec. 6, 2007) (stating "conclusory allegations contradicted by documentary evidence cannot be accepted as true")). Instead, the [non-movant's affidavit] "must set forth specific facts that reveal a genuine issue of material fact." *Kirleis*, 560 F. 3d at 161 (internal citations omitted). However, "'a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment.'" *Paladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018) (quoting *Lupyan v. Corinthian Colls., Inc.*, 761 F.3d 314, 320 (3d Cir. 2014)).

Delgadillo initially disputes Defendants' statement regarding the time of day the injury occurred and the time when Delgadillo initially received treatment, by arguing Defendants' statements are "contrary to Plaintiff's allegations set forth in his Amended Complaint." (Doc.

67-1, at ¶¶ 6-7). Delgadillo cannot rely on allegations from his pleadings to withstand a motion for summary judgment, and therefore cannot create a dispute regarding the time his injury occurred or when he initially received treatment based on his amended complaint. *See Ackah*, 2009 WL 2951986, at *2 (quoting *Jones*, 214 F.3d at 407).

However, Delgadillo also disputes the time of injury and initial treatment in paragraphs three through five of his affidavit. (Doc. 67-1, at ¶¶ 6-7). Therein, Delgadillo affirms that the injury occurred after he fell from his bunk in the "early morning" of December 15, 2013. (Doc. 67-3, at ¶¶ 3-5). The affidavit does not mention when Delgadillo initially received treatment, and does not contradict the 2:00 PM time of the initial treatment stated by Defendants, and supported by the Nursing Evaluation Tool notes in the record. (Doc. 60, at ¶ 7); (Doc. 62-1, at 1). The time of injury is relevant in establishing the length of time by which medical treatment was delayed. The contemporaneous medical treatment notes from Registered Nurse Bonetti indicate the injury occurred at 1:45 PM. (Doc. 62-1, at 1). Delgadillo asserts the injury occurred in the "early morning" but does not specify a time within the "early morning" or any other corroborating information suggesting the injury occurred in the "early morning." (Doc. 67-3, at ¶ 3). *See Kirleis*, 560 F. 3d at 161 (quoting *Blair*, 283 F. 3d at 603). The medical evidence of record contradicts Delgadillo's uncorroborated assertion within his affidavit. *See Iseley*, 2009 WL 1675731, at *11 (citing *Dantzler*, 2007 WL 5018184, at *8). For these reasons, the Court finds Delgadillo's conclusory affidavit, contradicted by medical record of evidence, does not create a dispute of material fact regarding the time the injury occurred. *See Kirleis*, 560 F. 3d at 161 (quoting *Blair*, 283 F. 3d at 603); *Iseley*, 2009 WL 1675731, at *11 (citing *Dantzler*, 2007 WL 5018184, at *8).

Even assuming, *arguendo,* that Delgadillo's affidavit created a dispute of fact regarding the time his injury occurred, any facts Delgadillo puts into dispute would be insufficient so withstand Defendants' motion for summary judgment. As discussed *supra*, there are limited circumstances under which non-medical prison personnel may be liable for a medical treatment claim brought pursuant to the Eighth Amendment. *See Davis v. Prison Health Servs.*, 558 F. App'x 145, 150 (3d Cir. 2014) (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *Jones v. Falor*, 135 F. App'x 554, 556 (3d Cir. 2005) (quoting *Spruill*, 372 F.3d at 236). To withstand a summary judgment motion on an Eighth Amendment claim based on a delay of medical care against non-medical personnel, the prisoner-plaintiff must come forth with some evidence establishing that the defendants interfered with his attempt to seek medical care. *See Perkins v. Schwappah*, 399 F. App'x 759, 762 (3d Cir. 2010) (upholding district court's entry of summary judgment in favor of corrections officer in part because the facts did not establish the corrections officer intended to deny prisoner-plaintiff medical treatment); *Reid-Douglas v. Mayer*, No. 4:09–cv–00576, 2013 WL 5966163, at *5-6 (M.D. Pa. Nov. 8, 2013) (denying correction officer's motion for summary judgment where prisoner-plaintiff established defendant undermined prisoner-plaintiff's initial visit to the nurse by suggesting a false cause of prisoner-plaintiff's injury); *see also Johnson v. Palockovich*, No. 04-CV-1804, 2007 WL 431890, at *9 n. 1 (M.D. Pa. Feb. 5, 2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976)) (discussing limited grounds for non-medical personnel to be found liable under an Eighth Amendment claim, which include "'intentionally denying or delaying access to medical care'").

Delgadillo's affidavit merely asserts the injury occurred in the "early morning" hours of December 15, 2013. It is undisputed that Delgadillo initially received medical treatment at

2:00 PM that day.[13] There is no evidence in the record that the Defendants—all non-medical prison personnel—prevented Delgadillo's access to medical care, or otherwise erected "arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates."[14] *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (internal citations omitted); *see also Perkins*, 399 F. App'x at 762; *Reid-Douglas*, 2013 WL 5966163, at *5-6. Based on the record before the Court, a reasonable juror could not conclude that the Defendants displayed deliberate indifference[15] to Delgadillo's medical needs.

_____

[13] Delgadillo asserts in his brief in opposition that he has "establish[ed] that the named correctional Defendants willfully ignored his pain and requests for medical assistance." (Doc. 67, at 6). Delgadillo does not provide a citation to the record for this assertion, nor does he specify when the requests were made, or to whom. Moreover, for purposes of creating a disputed material fact sufficient to withstand a summary judgment motion, "[u]nsubstantiated arguments made in briefs are not considered evidence of asserted facts." *See Iseley*, 2009 WL 1675731, at *11 (citing *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993)). Accordingly, the Court will not consider whether this unsubstantiated assertion from Delgadillo's brief in opposition to the instant motion could create a disputed material fact. *See Iseley*, 2009 WL 1675731, at *11 (citing *Versarge*, 984 F.2d at 1370).

[14] Specifically, Delgadillo's affidavit asserts he "complained to Sargeant [*sic*] Bocci and other corrections officers Defendants Stubbs, Kerstetter, and Synder about [the] injury throughout the day and into the evening." (Doc. 67-3, at ¶¶ 6-7). Even viewing the evidence in the light most favorable to Delgadillo, the mere fact that Delgadillo complained of pain to the Defendants would not permit a reasonable juror to find Defendants acted with deliberate indifference because there is no mention of actions taken by Defendants to hinder Delgadillo's receipt of medical care. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Perkins*, 399 F. App'x at 762; *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994); *Reid-Douglas*, 2013 WL 5966163, at *5-6.

[15] Paragraphs eight through eleven of Defendants' statement of material facts only go to the seriousness (Doc. 60, at ¶¶ 8; 11) or cause (Doc. 60, at ¶¶ 9-10) of Plaintiff's injury. The seriousness of the medical need is the first prong of a deliberate indifference claim.[15] *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). The arguments made in the briefing concern only the deliberate

As such, the Court respectfully recommends that Defendants' motion for summary judgment (Doc. 59) be **GRANTED** as to Delgadillo's remaining Eighth Amendment claim asserted against them.

## V. RECOMMENDATION

Based upon its review of the undisputed record before this Court, and having considered the arguments made by all parties, the undersigned recommends Defendants' motion for summary judgment (Doc. 59) be **DENIED IN PART** and **GRANTED IN PART**.

Specifically, it is recommended that:

1. Defendants' motion for summary judgment on the ground that Plaintiff's complaint falls outside the applicable statute of limitations be **DENIED**;

2. Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claim be **GRANTED**; and

3. The Clerk of Court be directed to **CLOSE** this case.

**BY THE COURT:**

Dated: August 22, 2019                       s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

---

indifference prong of Delgadillo's Eighth Amendment claim regarding his delayed receipt of medical treatment. (Doc. 60, at 6-12); (Doc. 67, at 5-6). Thus, even assuming *arguendo* that a disputed material fact existed regarding the seriousness of Plaintiff's medical need, Delgadillo cannot create a disputed material fact on the deliberate indifference prong of his Eighth Amendment claim. *See Jones*, 135 F. App'x at 556; *Durmer*, 991 F.2d at 69.

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

JOE DELGADILLO,
                Plaintiff,

     v.

COMMONWEALTH OF
PENNSYLVANIA DEPARTMENT OF
CORRECTIONS, et al.,
                Defendants.

CIVIL ACTION NO. 3:16-CV-00041

(MANNION, D.J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 22, 2019**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **August 22, 2019**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**